**LEAGO LAW GROUP**
Gina A. Leago (SBN 184647)
leago@leagolawgroup.com
2425 Olympic Blvd., Suite 4000W
Santa Monica, CA  90404
Telephone: (424)252-4208
Facsimile: (213) 995-9841

Attorneys for Defendant
**CONNIE JOSEPHINE TRONCALE**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANDERS KARLSSON, <br><br> Plaintiff, <br><br> v. <br><br> GENE EWING; RENE OVANDO; MARIA R. AVELINO alias HONEY GENEROSO; CATALINA GENEROSO; and CONNIE JOSEPHINE TRONCALE, <br><br> Defendant. | Case No. CV 14-00420 FMO(Ex) <br><br> [Assigned to Hon. Fernando M. Olguin, Courtroom 22] <br><br> **DEFENDANT CONNIE JOSEPHINE TRONCALE'S REVISED MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> **_Pre-Trial Conference Date_** <br><br> Date:         6/9/17 <br> Time:         10:00 a.m. <br> Courtroom:  22 <br><br> Trial Date:   6/27/17 <br> Action Filed: 9/16/14 |

Pursuant to Local Rule 16-4, Defendant Connie Josephine Troncale submits

her Revised Memorandum of Contentions of Fact and Law:

/ / /

/ / /

/ / /

/ / /

/ / /

1

# **TABLE OF CONTENTS**

2

**Page**

3   MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . 1

4   I.       INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   II.      L.R. 16-4.1 CLAIMS AND DEFENSES  . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6            A.       Plaintiff's Claims and Elements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7                     1.       Claim No. 1 - Intentional Misrepresentation   . . . . . . . . . . . . . 1

8                     2.       Claim No. 2 - Conspiracy  . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9                     3.       Claim No. 3 - Concealment  . . . . . . . . . . . . . . . . . . . . . . . . 10

10                    4.       Claim No. 4 - Constructive Trust . . . . . . . . . . . . . . . . . . . . . 14

11           B.       Defendant's Affirmative Defense Nos. 13 (Offset) and 10 (Lack

12                    of Consent)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

13           C.       Evidentiary Issue - Applicability of California Law  . . . . . . . . . . . . 18

14  III.     L.R. 16-4.3 - BIFURCATION OF ISSUES  . . . . . . . . . . . . . . . . . . . . . . . 19

15  IV.      L.R. 16-4.4 - JURY TRIAL  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

16  V.       L.R 16-4.5 - ATTORNEY'S FEES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

17  VI.      L.R. 16-4.6 - ABANDONMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . 20

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Deteresa v. American Broadcasting Companies, Inc.*
(9th Cir.1997) 121 F.3d 460 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fields v. Legacy Health Sys*. (9th Cir. 2005) 413 F.3d 943  . . . . . . . . . . . . . . . . . 18

*Ljepava v. M.L.S.C. Properties, Inc*. (9th Cir. 1980) 632 F.2d 815  . . . . . . . . . . . 15

*Mattel, Inc. v. MGA Entm't, Inc*. (9th Cir. 2010) 616 F.3d 904  . . . . . . . . . . . . . . 15

*Narayan v. EGL, Inc*. (9th Cir.2010) 616 F.3d 895  . . . . . . . . . . . . . . . . . . . . . . . 18

## STATE CASES

*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226 . . . . . . . . . . . . . . . . 3, 4

*Anderson v. Deloitte & Touche* (1997) 56 Cal.App.4th 1468 . . . . . . . . . . . . . . . . 2

*Arei II Cases* (2013) 216 Cal.App.4th 1004  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039 . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bernhard v. Harrah's Club* (1976) 16 Cal.3d 313 . . . . . . . . . . . . . . . . . . . . . . . . 18

*Blankenheim v. E. F. Hutton & Co*. (1990) 217 Cal.App.3d 1463 . . . . . . . . . . . . . 4

*Boschma v. Home Loan Center, Inc*. (2011) 198 Cal.App.4th 230 . . . . . . . . . . . . . 3

*Calistoga Civic Club v. City of Calistoga* (1983) 143 Cal.App.3d 111  . . . . . . . . 15

*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462  . . . . . . . . . . . . . . . . . 3

*Charpentier v. Los Angeles Rams Football Co*. (1999) 75 Cal.App.4th 301 . . . . . 3

*Communist Party v. 522 Valencia, Inc*. (1995) 35 Cal.App.4th 980  . . . . . . . . . . 15

*Corp. v. Litton Saudi Arabia Ltd*. (1994) 7 Cal.4th 503 . . . . . . . . . . . . . . . . . . . . 8

*Cory v. Shierloh* (1981) 29 Cal.3d 430 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39  . . . . . . . . . . . . . . . . . . . . . . 8

*Engalla v. Permanente Medical Group, Inc*. (1997) 15 Cal.4th 951  . . . . . . . . . . 3

*Frontier Oil Corp. v. RLI Ins. Co*. (2007) 153 Cal.App.4th 1436  . . . . . . . . . . . . 18

*Furla v. Jon Douglas Co*. (1998) 65 Cal.App.4th 1069 . . . . . . . . . . . . . . . . . . . . 3

1

**TABLE OF AUTHORITIES (Cont.)**

<u>Page</u>

2

**STATE CASES** (Cont.)

3   *Gagne v. Bertran* (1954) 43 Cal.2d 481 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4   *Guido v. Koopman* (1991) 1 Cal.App.4th 83 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5   *Hurtado v. Superior Court* (1974) 11 Cal.3d 574 . . . . . . . . . . . . . . . . . . . . . . . . 18

6   *Kahn v. Lischner* (1954) 128 Cal.App.2d 480 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7   *Kenne v. Stennis* (2014) 230 Cal.App.4th 953 . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8   *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571 . . . . . . . . . . . . . 8

9   *Kovich v. Paseo Del Mar Homeowners' Assn.* (1996) 41 Cal.App.4th 863 . . . . . 13

10  *Lazar v. Superior Court* (1996) 12 Cal. 4th 631 . . . . . . . . . . . . . . . . . . . . . . . . . . 19

11  *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326 . . . . . . . . . . . . . . . . . . . . . . 11-13

12  *Lingsch v. Savage* (1963) 213 Cal.App.2d 729 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

13  *Martin v. Kehl* (1983) 145 Cal.App.3d 228 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14  *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

15  *Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*
        (2007) 157 Cal.App.4th 835 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16

17  *Richard B. LeVine, Inc. v. Higashi* 131 Cal.App.4th at p. 574 . . . . . . . . . . . . . . . 8

18  *Rusheen v. Cohen* (2006) 37 Cal.4th 1048 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19  *Seeger v. Odell* (1941) 18 Cal.2d 409 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

20  *Smith v. Cimmet* (2011) 199 Cal.App.4th 1381 . . . . . . . . . . . . . . . . . . . . . . . . . . 18

21  *Trickey v. Superior Court* (1967) 252 Cal.App.2d 650 . . . . . . . . . . . . . . . . . . . . . 19

22  *Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285 . . . . . . . . . . . 12

23  *Wilkins v. National Broadcasting Co., Inc.* (1999) 71 Cal.App.4th 1066 . . . . . . . 13

24  *Williams v. Wraxall* (1995) 33 Cal.App.4th 120 . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25  *Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498 . . . . . . . . . . . . . . . . . . . . . . . . 4

26

27

28

1

**OUT OF STATE CASES**

2

*Echols v. Beauty Built Homes, Inc.* (1982) 132 Ariz. 498 . . . . . . . . . . . . . . . . . . . 19

3

4

**STATE STATUTES**

5

Cal.Civ.Code, § 1710, subd. (3)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

6

Cal. Code Civ. Proc., § 877 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CONNIE JOSEPHINE TRONCALE'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.    INTRODUCTION**

3   This is a diversity action for fraud[1] brought by Plaintiff Anders Karlsson

4   ("Karlsson" or "Plaintiff") against Defendant Connie Josephine Troncale

5   ("Troncale" or "Defendant").  In his Fourth Amended Complaint ("4AC") [Dkt. 46],

6   Karlsson alleges fraud against Troncale based on three theories.  First, Karlsson

7   alleges that he was fraudulently induced into investing in a "pretended rental income

8   stream from billboard graphics" (the "Billboard Investment") by Troncale's

9   intentional misrepresentations to Karlsson.   Second, Karlsson alleges that he was

10   fraudulently induced to invest in the Billboard Investment by Maria Avelino

11   ("Avelino") and Catalina Generoso ("Generoso"), and that Troncale participated in

12   an alleged conspiracy with Avelino and Generoso to induce Plaintiff to invest.[2]

13   Third, Karlsson claims that he will also allege at trial that Troncale fraudulently

14   concealed information from Karlsson.  Ultimately, all three theories fail as Karlsson

15   is unable to establish the elements required to prove each claim.

16   In addition to compensatory damages, Karlsson seeks a constructive trust as a

17   remedy. Karlsson is not entitled to a constructive trust because he cannot establish

18   the elements to warrant the imposition of such trust in this case.

19   **II.    L.R. 16-4.1 CLAIMS AND DEFENSES**

20   **A.    Plaintiff's Claims and Elements**

21   **1.    <u>Claim No. 1 – Intentional Misrepresentation</u>**

22   ***Summary Statement of Plaintiff's Claim No. 1***

23   Karlsson alleges that he spoke to Troncale on four occasions prior to making

24   his investments in the Billboard Business where she made intentional

---

25   [1]   Plaintiff  Karlsson and Defendant Troncale have stipulated that Karlsson will **not** claim, plead,
26   nor seek breach of contract claims, breach of fiduciary duty claims, treble damages claims, breach
of good faith and fair dealing claims, any other tort claims with the exception of fraud in any of its
27   forms and all available relief therefor, injunctive relief, and declaratory relief. [Dkt. 44]
[2]   In his Second Amended Complaint, Plaintiff alleged that Ewing and Ovando also induced him
28   into investing in the Billboard Business.

misrepresentations to him in order to get him to invest in Avelino's Billboard Business: (1) the first time was during a phone call on or about September 15, 2012; (2) the second time was at Gene Ewing ("Ewing") and Rene Ovando's ("Ovando")[3] condo on or about September 18, 2012; (3) the third conversation was during what Karlsson refers to as a "dinner party meeting" at Troncale's condo on November 16, 2012, and (4) the fourth time was during a telephone call on December 4, 2012.

### Elements Required to Establish Claim No. 1

To prevail on his intentional misrepresentation claim, Karlsson must prove all of the following: (1) That Troncale represented to Karlsson that a fact was true; (2) That Troncale 's representation was false; (3) That Troncale knew the representation was false when she made it, or that she made the representation recklessly and without regards for its truth; (4) That Troncale intended that Plaintiff rely on the representation; (5) That Karlsson reasonably relied on Troncale 's representation; (6) That Karlsson was harmed; and (7) That Karlsson 's reliance on Troncale's representation was a substantial factor in causing his harm.

*See Judicial Council of California Civil Jury Instructions* ("CACI") 1900.

With regard to the scienter element, the requisite state of mind for actual fraud or intentional misrepresentation is disbelief in the truth of the statement, i.e., knowledge of falsity. *Anderson v. Deloitte & Touche* (1997) 56 Cal.App.4th 1468. Thus to prevail, Karlsson must establish that Troncale knew that her statements were false at the time the statements were made.

With regard to the misrepresentations made, "[t]he law is well established that actionable misrepresentations must pertain to past or existing material facts. Statements or predictions regarding future events are deemed to be mere opinions

---

[3]   In his Second Amended Complaint, Plaintiff alleged that Ewing and Ovando also induced him into investing in the Billboard Business. After Plaintiff settled with Ewing and Ovando, he filed another amended complaint omitting the allegations against them.

1   which are not actionable." *Cansino v. Bank of America* (2014) 224 Cal.App.4th

2   1462, 1469, internal citation omitted.  Whether a statement is nonactionable opinion

3   or actionable misrepresentation of fact is a question of fact for the jury." *Furla v.*

4   *Jon Douglas Co.* (1998) 65 Cal.App.4th 1069, 1080-81, internal citations omitted.)

5       With regard to intent, a fraudulent state of mind includes not only knowledge

6   of falsity of the misrepresentation but also an ' "intent to ... induce reliance" ' on it.

7   [Citation]." *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 976.

8   "'[I]ntent to deceive' is not an essential element of the cause of action, ..." the

9   required intent is an intent to induce action.  *Gagne v. Bertran* (1954) 43 Cal.2d 481,

10  488.

11      With regard to reasonable reliance, the Plaintiff must show that (1) he actually

12  relied on the statement and (2) that such reliance was reasonable.    A plaintiff

13  establishes reliance "when the misrepresentation or nondisclosure was an immediate

14  cause of the plaintiff's conduct which altered his or her legal relations, and when

15  without such misrepresentation or nondisclosure he or she would not, in all

16  reasonable probability, have entered into the contract or other transaction.

17  [Citations.]" *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239; see

18  CACI No. 1907 (2013 ed.) [reliance shown if misrepresentation, concealment or

19  false promise "substantially influenced" plaintiff and he or she "would probably not

20  have" acted absent it].    "Reliance can be proved in a fraudulent omission case by

21  establishing that 'had the omitted information been disclosed, [the plaintiff] would

22  have been aware of it and behaved differently.' [Citation.]"  *Boschma v. Home Loan*

23  *Center, Inc.* (2011) 198 Cal.App.4th 230m 250, quoting *Mirkin v. Wasserman*

24  (1993) 5 Cal.4th 1082, 1093.

25      After establishing actual reliance, the plaintiff must show that the reliance

26  was reasonable by showing that (1) the matter was material in the sense that a

27  reasonable person would find it important in determining how he or she would act

28  *Charpentier v. Los Angeles Rams Football Co.* (1999) 75 Cal.App.4th 301, 313;

3

and (2) it was reasonable for the plaintiff to have relied on the misrepresentation. *Blankenheim v. E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475; see CACI No. 1908 (2013 ed.). Although a plaintiff's negligence in failing to discover the falsity of the statement or the suppressed information is not a defense to fraud (*Alliance Mortgage*, supra, 10 Cal.4th at pp. 1239-1240), a plaintiff's particular knowledge and experience should be considered in determining whether the reliance upon the misrepresentation or nondisclosure was justified. *Id*. at p. 1240; see CACI No. 1908 (2013 ed.). "If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable ... he will be denied a recovery." *Seeger v. Odell* (1941) 18 Cal.2d 409, 414. Thus, for example, where a woman, who was an attorney, signed a release of liability before sustaining injuries from a horseback riding lesson, and later claimed that she had relied on the defendant's statement that the release was " 'meaningless,' " she was held under the circumstances not to have justifiably relied on that statement. *Guido v. Koopman* (1991) 1 Cal.App.4th 837, 843–844; *see Kahn v. Lischner* (1954) 128 Cal.App.2d 480 [seller did not justifiably rely on buyer's statement estimating land's value, given, among other things, fact that seller was professional of significant intelligence].

With regard to causation, "[a] plaintiff asserting fraud by misrepresentation is obliged to ... 'establish a complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom." *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 864. "The causation aspect of actions for damage for fraud and deceit involves three distinct elements: (1) actual reliance, (2) damage resulting from such reliance, and (3) right to rely or justifiable reliance." *Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498, 513. Thus, there are two causation elements in a fraud cause of action. First, the plaintiff's actual and justifiable reliance on the defendant's misrepresentation must have caused him to take a detrimental course of

4

action. Second, the detrimental action taken by the plaintiff must have caused his alleged damage. *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1062. "Causation requires proof that the defendant's conduct was a 'substantial factor' in bringing about the harm to the plaintiff." *Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 132, internal citations omitted.

### *Key Evidence in Opposition to Plaintiff's Claim No. 1*

There is a dispute between Karlsson and Troncale as to how many times they spoke to one another and what was said. Troncale denies any telephone conversations with Karlsson on September 12, 2012 or December 4, 2012. Troncale's telephone records confirm no calls between Karlsson and Troncale on or around those dates. Troncale spoke to Karlsson twice prior to his investment – once at Ewing's condo and a second time when Karlsson dropped by Troncale's condo unexpectedly. The subject of the Billboard Investment came up only during the conversation at Ewing's condo and then, only in response to questions by Karlsson to Troncale. The statements made by Troncale in response to those questions were not false. She was a long term investor in Avelino's billboard business and had not had any problems with the investment.

In addition to the fact that Troncale did not make any statements which were false, Karlsson did not rely on Troncale's representations and any purported reliance by Karlsson was not reasonable under the circumstances. Moreover, Troncale's statements were not the cause of Karlsson's damages and indeed, Karlsson did not sustain damages. Troncale, like Karlsson and the other investors believed that the Billboard Investment was a legitimate investment. Karlsson spoke to other investors before making the investment and communicated extensively with Avelino. Karlsson, like Troncale and the others investors, relied on the statements and the conduct of Avelino in deciding to invest in the Billboard Investment.

The key evidence supporting Troncale's opposition to Karlsson's claim no. 1 for intentional misrepresentation is as follows:

1    **TESTIMONY**: The testimony of Anders Karlsson, Connie J. Troncale,

2    Marissa Pomerantz, Meir Westreich, Danael Karlsson, Gene Ewing, Rene Ovando,

3    Catalina Generoso, Maria Avelino, Toni Legras, Brooke Pomerantz, Nick

4    Pomerantz, Jorge Ragde, and Lucile Ragde, Eleonor Oyie Esguerra.

5    **EXHIBITS**: Key exhibits supporting Troncale's opposition Karlsson's claim

6    No. 1 for intentional misrepresentation can be found in ***Appendix 1*** attached hereto.

7    ### 2.    <u>Claim No. 2 – Conspiracy</u>

8    ### *Summary Statement of Plaintiff's Claim No. 2*

9    Karlsson alleges that Troncale conspired with Ewing, Ovando, Avelino and

10   Generoso to fraudulently induce Karlsson to invest in the Billboard Investments.   In

11   his 4AC [DKT #46], Karlsson alleges that Avelino and Generoso made

12   misrepresentations to Karlsson about the Billboard Investments on the following

13   occasions:

14       1.    On September 13, 2012, Avelino and Karlsson had a telephone call

15   wherein Avelino "declared that she provided many investment opportunities to

16   many people in the Billboard Investment Scheme; that there were only a few current

17   Billboard Investment opportunities which might quickly be taken by others; and she

18   explained that these billboard sales were with KB Homes and Disneyland.";

19       2.    On the September 13, 2012 call, Avelino also "cited Defendant

20   Troncale as one such investor, and that Troncale had invested for almost fifteen (15)

21   years with her, and that there never had been any issues with any payments."

22       3.    On September 28, 2012, Avelino called Karlsson many times to pump

23   him up for another investment, often telling him to call Troncale for assurance.

24   Each time [Avelino] referred to the Billboard Investments as involving past, current

25   and prospective KB Homes and Disney contracts."

26       4.    On December 1, 2012, Avelino and Karlsson allegedly met at

27   Karlsson's home in Hollywood.  Avelino told Plaintiff that several Billboard

28   Investment participants were deciding to be paid out on their 13th check, thereby

1    making several existing Billboard Investments "available" for a new investor.

2    Kalrsson further alleges that such representations were made by Avelino to Karlsson

3    in 2-3 telephone calls in the preceding two weeks.

4        5.    Generoso actively permitted Avelino to use her name and bank

5    accounts to implement the fraudulent transaction.  Generoso executed and issues

6    Billboard Investment checks to "investors" which were paid from "investments"

7    from other, new "investors, and which checks often were returned unpaid".

8    Generoso issued "replacement" checks, most of which were unpaid.

9                    ***Elements Required to Establish Plaintiff's Claim No. 2***

10       A conspiracy is an agreement by two or more persons to commit a wrongful

11   act.  Such agreement may be made orally or in writing  or may be implied by the

12   conduct of the parties.

13        First, Karlsson must prove actual fraud against Avelino and Generoso as a

14   prerequisite to his conspiracy claim. Karlsson must prove all of the following:  (1)

15   that Avelino and Generoso represented to Karlsson that a fact was true; (2) that

16   Avelino and Generoso's representations were false; (3) that Avelino and Generoso

17   knew the representations were false when they made it, or that they made the

18   representations recklessly and without regard for its truth; (4) that Avelino and

19   Generoso intended that Karlsson rely on the representation; (5) that Karlsson

20   reasonably relied on Avelino and Generoso 's representation; (6) that Karlsson was

21   harmed; and (7) that Karlsson's reliance on Defendant's representation was a

22   substantial factor in causing his harm.

23        If Karlsson establishes that Avelino and Generoso committed a fraud against

24   Karlsson, only then does the trier of fact consider whether Troncale is responsible

25   for his alleged damages under a conspiracy theory.   Under a conspiracy theory,

26   Troncale cannot be liable unless Karlsson proves both of the following: (1) that

27   Troncale was aware that Generoso and Avelino planned to defraud Karlsson; ***<u>and</u>***

28

---

7

(2) that Troncale agreed with Generoso and Avelino, and intended that the fraud be committed.

Mere knowledge of a wrongful act without cooperation or an agreement to cooperate is insufficient to make Troncale responsible for the harm.  A conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged coconspirators. *See* CACI 1900, 3600.

Civil conspiracy is not an independent cause of action.  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510 ("Applied Equipment"); *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 968.  Instead, it is a theory of co-equal legal liability under which certain defendants may be held liable for "an independent civil wrong"  *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062; *see also Applied Equipment*, at p. 511; *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44  committed by others. A participant in the conspiracy "effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." See *Applied Equipment*, at p. 511.

Under a conspiracy theory of recovery, liability depends on the actual commission of a tort. (*See Applied Equipment*, supra, 7 Cal.4th at p. 511; *Richard B. LeVine, Inc. v. Higashi*, supra, 131 Cal.App.4th at p. 574; *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1582 [" '[t]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act' "].)  Liability "presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." *Applied Equipment*, at p. 511.  For conspiracy liability, the conspiring defendants must have actual knowledge that a tort is planned and concur in the scheme with knowledge of its unlawful purpose. *Kidron*, at p. 1582. Knowledge of the planned tort must be combined with intent to aid in its commission.  *Ibid.*  "An

agreement may be tacit as well as express. [Citation.] A conspirator's concurrence in the scheme "may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances." *Arei II Cases* (2013) 216 Cal.App.4th 1004, 1024.

### Key Evidence in Opposition to Plaintiff's Claim No. 2

In order to prevail on a conspiracy theory, Plaintiff will have to prove that Avelino and Generoso are liable for fraud.  Plaintiff has information that Avelino is deceased.  She was not deposed prior to her death.  Plaintiff has information that Generoso is outside the jurisdiction of the United States.  She was not deposed.  If Plaintiff can prove that Avelino and Generoso defrauded him notwithstanding these evidentiary hurdles, Plaintiff must then also prove that Troncale knew about the fraud and concurred with its scheme with knowledge of its unlawful purpose.

The evidence will show that Troncale, like the other investors, believed that the Billboard Investment was legitimate given her long history of investing without incident.  While the investors who lost money on the investment now surmise that there was never any Billboard Business to begin with, there has been no determination in that regard.  There was no criminal indictment or other adjudication by any court or prosecutorial body that the Billboard Business was a fraud or a Ponzi or pyramid scheme.

The evidence will show that Troncale did not make false representations to Plaintiff nor did Plaintiff rely on Troncale's representations in making the investment.  Even if Karlsson can establish such reliance that reliance was not reasonable or justified under the circumstances.  Moreover, because Karlsson assigned his investments and dividend checks to Ewing and his son, Danael Karlsson ("Danael"), he has not suffered any damages.  Stated another way, Karlsson does not have standing to recover for damages for investment funds that were to be paid to his son and to Gene Ewing.

The evidence will further show that Troncale never conspired nor agreed with Avelino or Generoso to induce Karlsson to invest in the Billboard Investment. Troncale was never Avelino's agent.  Troncale was never Generoso's agent. Troncale had no involvement in Plaintiff's investment.  The evidence will show that Plaintiff dealt directly with Avelino.  He met with her multiple times, he spoke to her by phone multiple times and had email and text message exchanges with her. Plaintiff obtained the promissory notes directly from Avelino and/or Ewing.  The money for Plaintiff's investment was wired from his attorney's trust account directly to Avelino's bank account.  The dividend checks were given by Avelino directly to Plaintiff and/or Ewing.

The key evidence supporting Troncale's opposition to Karlsson's claim no. 2 for conspiracy is as follows:

**TESTIMONY:**  The testimony of Anders Karlsson, Connie J. Troncale, Marissa Pomerantz, Meir Westreich, Danael Karlsson, Gene Ewing, Rene Ovando, Catalina Generoso, Maria Avelino, Toni Legras, Brooke Pomerantz, Nick Pomerantz, Jorge Ragde, and Lucile Ragde, Eleonor Oyie Esguerra.

**EXHIBITS:** Key exhibits supporting Troncale's opposition Karlsson's claim No. 2 for conspiracy can be found in ***Appendix 1*** attached hereto.

### 3.   Claim No. 3 – Concealment

#### Summary Statement of Plaintiff's Claim No. 3

Karlsson alleges that he was harmed because of Troncale's alleged concealment of information which Troncale was obligated to disclose regarding the Billboard Investments.

#### Elements Requires to Establish Claim No. 3

To prevail on a claim of concealment, Karlsson must prove all of the following: (1) that Troncale and Karlsson had a duty-bound relationship which obligated Troncale under the law to disclose a material fact to Karlsson; (2) that Troncale intentionally failed to disclose such facts to Karlsson;  (3) that Karlsson

10

did not know of the concealed material fact; (4) that Troncale intended to deceive Karlsson by concealing the fact; (5) that had the omitted information been disclosed, Karlsson would have behaved differently; (6) that Karlsson was harmed; and (7) that Troncale's concealment was a substantial factor in causing Karlsson's harm. *See CACI 1901.*

A fraud claim based upon the suppression or concealment of a material fact must involve a defendant who had a legal duty to disclose the fact. Cal.Civ.Code, § 1710, subd. (3) [a deceit includes "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact"]; see Judicial Council of Cal., Civ. Jury Instns. (2013) CACI No. 1901. As noted, under Civil Code section 1710, subdivision (3), fraud may consist of a suppression of a material fact in circumstances under which the defendant has a legal duty of disclosure. See *Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 735 ["the person charged with the concealment or nondisclosure of certain facts" must be found to be "under a legal duty to disclose them"].

As explained by the Fourth District Court of Appeal, Division One, "[t]here are 'four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. [Citation.]' [Citation.]"  *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 336 ("*LiMandri*" ).) As the court in *LiMandri* explained further, other than the first instance, in which there must be a fiduciary relationship between the parties, "the other three circumstances in which nondisclosure may be actionable presuppose[ ] the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise.... '[W]here material facts are known to one party and not to the other, failure to disclose them is not

actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose such known facts.' [Citation.]"  *Id*. at pp. 336-337, original italics, quoting BAJI No. 12.36 (8th ed. 1994).

A relationship between the parties is present if there is "some sort of transaction between the parties. [Citations.] Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." *LiMandri*, at p. 337, original italics, citing *Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 294; see Use Note to CACI No. 1901 [indicating that for concealment claim not based upon fiduciary relationship, "if the defendant asserts that there was no relationship based on a transaction giving rise to a duty to disclose, then the jury should also be instructed to determine whether the requisite relationship existed"].

Several cases have rejected fraud claims founded on nondisclosure where there was an absence of a relationship between the plaintiff and the defendant. For instance, in *LiMandri*, supra, 52 Cal.App.4th 326, the plaintiff was an attorney representing multiple plaintiffs (including Mr. and Mrs. Deddah (the Deddahs) ) in environmental litigation. (*Id*. at p. 334.) LiMandri in separate litigation sued Judkins, an attorney for a lender (Security Trust Company (Security) bearing LiMandri's ) that had made a loan to the Deddahs secured by their expectancy interest in the environmental litigation.  *Ibid*. After Judkins had spoken with LiMandri, had advised him that Security had made a loan to the Deddahs, and had asked LiMandri about the status of the environmental litigation and its settlement value, Judkins (unbeknownst to LiMandri) filed a notice of lien on behalf of Security as to any proceeds obtained by the Deddahs in the case. *Ibid*.  After the environmental litigation was settled, the Deddahs' share was deposited with the court in a separate interpleader action that caused LiMandri to incur fees and costs, and delayed his receipt of any earned fees.  *Id*. at p. 335.  LiMandri sued Judkins for

12

fraud, alleging that in their conversation, he had fraudulently concealed that (1) Security had been granted a lien against the Deddahs' interest in the environmental litigation; (2) Security was claiming superior lien rights; (3) Judkins had prepared a notice of lien bearing LiMandri's name and State Bar number and intended to file it; and (4) Judkins was taking steps to interfere with LiMandri's contractual fee relationship with the Deddahs.  *Id*. at p. 336.  The court in *LiMandri* held that the plaintiff had failed to state a claim for fraudulent concealment because there was no relationship or transaction between LiMandri and Judkins that imposed upon Judkins a duty to disclose the specifics of Security's lien rights.  *Id*. at p. 337.

Similarly, in *Wilkins v. National Broadcasting Co., Inc.* (1999) 71 Cal.App.4th 1066, 1072–1073 (*Wilkins* ), the plaintiffs, representatives of "a pay-per-call provider," sued a television network and two of its producers for secretly videotaping a purported business meeting at a restaurant after portions of the videotape were aired in a program entitled " 'Hardcore Hustle.' " Included among the plaintiffs' claims was a fraud claim based upon nondisclosure of the fact that they were the subject of an investigation by journalists involving hidden cameras, when the plaintiffs believed they were meeting with potential investors. *Id*. at p. 1082. The appellate court, relying in part on *LiMandri*, supra, 52 Cal.App.4th 326, concluded that summary adjudication of that fraud claim was proper, because the plaintiffs "have presented no evidence that they and [the producers] shared the requisite relationship which would impose upon the NBC Dateline producers a duty to disclose the use of hidden cameras. [Citations.]" *Wilkins*, at p. 1083, see *Deteresa v. American Broadcasting Companies, Inc.* (9th Cir.1997) 121 F.3d 460, 467 (*Deteresa*) [fraud claim by flight attendant who was secretly audiotaped and videotaped during interview by television producer concerning 1994 flight in which O.J. Simpson was passenger was not viable; there was no relationship between her and the defendants as required under *LiMandri* ]; *Kovich v. Paseo Del Mar Homeowners' Assn.* (1996) 41 Cal.App.4th 863, 866–867 [homeowners association

13

1  not liable for nondisclosure to townhome buyer of existence of construction defects

2  and related litigation, where association was not seller, party to contract, or held any

3  relationship to buyer].)

4  *Key Evidence in Opposition to Claim No. 3*

5  The evidence will show that there was no special relationship between

6  Plaintiff and Troncale which gave rise to a duty to disclose material information.

7  Even if such a relationship arguably existed, Troncale did not know if a material fact

8  which she concealed from Plaintiff.  Troncale had no intent to deceive Plaintiff by

9  concealing a known fact.  Troncale, like Karlsson and the other investors believed

10  that Avelino's Billboard Business was a legitimate business.   Troncale, like

11  Karlsson and the other investors relied on the statements made by Avelino in

12  deciding to invest in the Billboard Investment.  Karlsson did not sustain damage by

13  his decision to invest in the Billboard Investment.  Most importantly, Troncale's

14  representations were not the cause of Karlsson's alleged harm.

15  The key evidence supporting Troncale's opposition to Karlsson's claim no. 3

16  for concealment is as follows:

17  **TESTIMONY:** The testimony of Anders Karlsson, Connie J. Troncale,

18  Marissa Pomerantz, Meir Westreich, Danael Karlsson, Gene Ewing, Rene Ovando,

19  Catalina Generoso, Maria Avelino, Toni Legras, Brooke Pomerantz, Nick

20  Pomerantz, Jorge Ragde, and Lucile Ragde, Eleonor Oyie Esguerra.

21  **EXHIBITS**: Key exhibits supporting Troncale's opposition Karlsson's claim

22  No. 3 for concealment can be found in ***Appendix 1*** attached hereto.

23  **4.   Claim No. 4 – Constructive Trust**

24  *Summary Statement of Plaintiff's Claim No. 4*

25  Karlsson contends if he obtains a compensatory verdict in his favor, that the

26  court should impose a constructive trust over property currently held by Troncale.

27  *Elements Requires to Establish Claim No. 4*

28

A constructive trust may only be imposed where the following three conditions are satisfied: (1) the existence of a res (property or some interest in property);  (2) the right of a complaining party to that res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to it; and  (4) the res is traceable to the wrongful act. See *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 908-09 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010); *Ljepava v. M.L.S.C. Properties, Inc.*, 632 F.2d 815, 816 (9th Cir. 1980), citing *Corely v. Hennessy*, 58 Cal.App.2d 883, 137 P.2d 857 (1943)(a trust will not be created by judicial decree when there is no property upon which the trust can be impressed, since a plaintiff's right to an adjudication of ownership depends upon his ability to identify the money as a particular fund or to trace it into specific property); *Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 990; *Martin v. Kehl* (1983) 145 Cal.App.3d 228, 237–38; *Calistoga Civic Club v. City of Calistoga* (1983) 143 Cal.App.3d 111, 116; *Weiss v. Marcus* (1975) 51 Cal.App.3d 590, 600.

### *Key Evidence in Opposition to Plaintiff's Claim No. 4*

The evidence will show that Karlsson has no right to a constructive trust over Troncale's property, that the property currently owned by Troncale was **not** acquired by wrongful acquisition or detention, and that the property is not traceable to any relationship with the Billboard Investment.

Plaintiff's investments were made September 28, 2012 and December 7, 2012.   Plaintiff contends that his investment funds were used to pay Troncale. However, Plaintiff has no evidence to support this contention.  Plaintiff has identified some real property documents as his trial exhibit 21, which is the subject of Motion in Limine No. 4.  Within these documents, only one transaction occurred after Plaintiff's investment and this transaction (December 21, 2012) was borrowing of funds against property, not acquiring property with funds.

The key evidence supporting Troncale's opposition to Karlsson's claim no.4 for constructive trust is as follows:

1   **TESTIMONY**: The testimony of Anders Karlsson, Connie J. Troncale,

2   Marissa Pomerantz, Meir Westreich, Danael Karlsson, Gene Ewing, Rene Ovando,

3   Catalina Generoso, Maria Avelino, Toni Legras, Brooke Pomerantz, Nick

4   Pomerantz, Jorge Ragde, and Lucile Ragde, Eleonor Oyie Esguerra.

5   **EXHIBITS:** Key exhibits supporting Troncale's opposition Karlsson's claim

6   No. 4 for constructive trust can be found in *Appendix 1* attached hereto.

7       **B.**    **Defendant's Affirmative Defenses Nos. 13 (Offset) and No. 10**

8                   **(Lack of Damage)**

9               ***Summary Statement of Affirmative Defense***

10       Plaintiff assigned one of the promissory notes from Generoso in the amount

11   of $150,000 to Gene Ewing ("Ewing") in lieu of paying Ewing $150,000 cash

12   toward the separate art investment between Plaintiff and Ewing. Plaintiff then sued

13   Ewing and Ovando for art fraud and collected a settlement.  Therefore, Plaintiff has

14   not been damaged by this $150,000 investment in the billboard business because he

15   assigned the promissory note and the dividend checks to Ewing.  Ewing was then

16   unable to collect the principal investment and was only able to cash some of the

17   dividend checks.  If Plaintiff is permitted to seek damages for this promissory note

18   then it should be offset by the settlement he received from Ewing and Ovando.

19       In the 4AC [Dkt #46], Karlsson alleges that "[a]ll claims against Defendants

20   Gene Ewing and/or Rene Ovando have been resolved by settlement between them

21   and Plaintiff, in accordance with which all of the allegations and claims against

22   them were dismissed with prejudice."   Karlsson's recovery must be setoff to the

23   extent that Karlsson obtained any recovery pursuant to that settlement.[4]

24

25

26

27   ---

28   [4]   Plaintiff has refused to produce a copy of the settlement documents, claiming that they are subject to a confidentiality provision in the settlement agreement.

*Elements of Affirmative Defense*

Plaintiff's recovery, if any, must be reduced by any recovery obtained by Karlsson from Gene Ewing and/or Ovando.  See Cal. Code Civ. Proc. §877.  In cases of partial settlements, the non-settling defendants are entitled to a setoff of any judgment for which they are jointly and severally liable. *Goodman v. Lozano* (Cal. 2010) 223 P.3d 77.

*Evidence in Support of Affirmative Defense*

The evidence will show that Karlsson entered into a settlement with Ewing and Ovando, the amount of which must be setoff against any judgment obtained against Troncale.

**TESTIMONY:** The testimony of Anders Karlsson, Meir Westreich, Danael Karlsson, Gene Ewing, Rene Ovando, the person most qualified of Glaser Weil Fink Howard Avchen & Shapiro LLP, and the Custodian of Records of Glaser Weil Fink Howard Avchen & Shapiro LLP

**EXHIBITS:**

| Exhibit | Date | Description |
|---------|------|-------------|
| 156 | 1-17-2014 | Complaint [Dkt. 1] |
| 157 | 11-13-2012 | Drips on White Contract – Exhibit A to Complaint [Dkt. 1] |
| 158 | 3-4-2013 | Letter to Anders Karlsson and Gene Ewing from Modern Art Conservation – Exhibit B to Complaint [Dkt. 1] |
| 159 | UNDATED | Ewing "Art Furniture" - Exhibit C to Complaint [Dkt. 1] |
| 160 | 9-28-2012 | Promissory Note from Catalina Generoso to Anders and Danael Karlsson for Principal Investment of $300,000 – Exhibit D to Complaint [Dkt. 1] |
| 161 | 11-13-2012 | Promissory Note from Catalina Generoso to Anders and Danael Karlsson for Principal Investment of $150,000 – Exhibit E to Complaint [Dkt. 1] |
| 162 | 12-7-2012 | Promissory Note from Catalina Generoso to Danael Karlsson for Principal Investment of $100,000 – Exhibit F to Complaint [Dkt. 1] |
| 163 | 3-20-2014 | First Amended Complaint [Dkt. 7] |
| 164 | 6-25-2014 | Second Amended Complaint [Dkt. 29] |

17

| Exhibit | Date | Description |
|---------|------|-------------|
| 165 | 9-22-2014 | Third Amended Complaint [Dkt. 42] |
| 166 | 10-20-2014 | Fourth Amended Complaint [Dkt. 46] |

### C.   Evidentiary Issue - Applicability of California Law

California law applies in the instant action. Plaintiff concedes in his 4AC: "Venue is properly located in the Central District of California because the two claims in controversy – involving contract breaches and torts – were consummated, and any corpus thereof is located, in Los Angeles County, California." [4AC, ¶3, {DKT #46}]  "To determine the applicable substantive law, a federal court sitting in diversity applies the choice-of-law rules of the forum." *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir.2010) (citing *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir.2005)). When two states are potentially interested in having their laws applied, California courts employ a governmental interest analysis to determine possible conflicts of law for issues not governed by contractual choice of law provisions. *Smith v. Cimmet* (2011) 199 Cal.App.4th 1381, 1395 ; see *Bernhard v. Harrah's Club* (1976) 16 Cal.3d 313, 316  (superseded by statute on other ground as stated in *Cory v. Shierloh* (1981) 29 Cal.3d 430, 434; *Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 580–81 (1974).

The first step in the governmental interest analysis is to determine whether the applicable rules of law of the potentially concerned jurisdictions materially differ. If there is no material difference, there is no choice-of-law problem and the court may proceed to apply California law." *Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1465 (citing *Washington Mutual Bank, FA v. Superior Court of Orange County* (2001) 24 Cal.4th 906, 919) (internal citations omitted).

Here, there is no material difference under California law vs. Arizona law as it relates to fraud. Under California law, the elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4)

18

justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court* (1996) 12 Cal. 4th 631, 638. A plaintiff must establish each one of these elements to prevail on a cause of action for fraud. Under Arizona law, a showing of fraud requires (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury. *Echols v. Beauty Built Homes, Inc.* (1982) 132 Ariz. 498. Each element must be supported by sufficient evidence. "Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence." *In re McDonnell's Estate* (1947) 65 Ariz. 248, 253; *Fridenmaker v. Valley National Bank of Arizona* (1975) 23 Ariz.App. 565.

As there is no material difference in the laws of California and Arizona, California law will apply in this California forum.

## III.   L.R. 16-4.3 – BIFURCATION OF ISSUES

The Parties agree to a bifurcation of the issue relating to punitive damages in accord with California Civil Code section 3295(d).  The Parties' objective in seeking bifurcation of punitive damages issues is to avoid wasting the court's time and incurring additional costs and fees to the parties by unnecessary trial of punitive damage questions during liability phase of the trial. See *Trickey v. Superior Court* (1967) 252 Cal.App.2d 650, 653.   The first phase of the trial is the liability and compensatory damage phase.  The jury will be asked if Troncale acted with malice.  If the jury finds that Troncale acted with malice, then the second phase of the trial will determine what amount of punitive damages, if any, should be awarded to Plaintiff.

## IV.   L.R. 16-4.4 – JURY TRIAL

Plaintiff has requested a jury trial.

DEFENDANT CONNIE JOSEPHINE TRONCALE'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## V.    L.R  16-4.5 – ATTORNEY'S FEES

Not applicable.  Neither party is entitled to attorneys' fees.

## VI.    L.R. 16-4.6 – ABANDONMENT OF ISSUES

At this time, Troncale abandons all affirmative defenses except for offset (Thirteenth Affirmative Defense) and lack of damage (Tenth Affirmative Defense).

DATED: May 25, 2017                    **LEAGO LAW GROUP**
                                        By:  _____/s/ Gina A. Leago_____
                                                Gina A Leago
                                        Attorneys for Defendant **CONNIE**
                                        **JOSEPHINE TRONCALE**

DEFENDANT CONNIE JOSEPHINE TRONCALE'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## APPENDEX NO. 1

| Exh. | Date | Description |
|------|------|-------------|
| 1 | 2012 | Karlsson & Avelino-Generoso Transactional Documents & Checks |
| 2 | 10-3-2012 | Karlsson & Avelino-Generoso Financial Investment Payments |
| 3 | 2012 | IRS Income Document, Maria Avelino |
| 4 | MULTIPLE DATES | Troncale-Pomerantz-Legras Financial Instruments and Records re Avelino-Generoso Investment Scheme |
| 9 | 3-5-2013 to 3-19-2014 | Connie & Marissa E-Mail Chain |
| 10 | 9-27-12 to 1-4-13] | Checks, Generoso to Troncale-Pomerantz |
| 12 | 2012-2013 | Danael Karlsson Financial Documents re Avelino-Generoso [2012-2013] |
| 13 | MULTIPLE DATES | GE-RO & Avelino-Generoso Transactional Documents & Checks |
| 14 | 2012-2013 | Gmail.GE.RO.CT.AK |
| 15 | 2012-2013 | Texts. CT.AK |
| 16 | 2013 | Gmail.JR,Jr.AK |
| 101 | 1-4-2013 | Promissory Note from Catalina Generoso to Connie Troncale for Principal Investment of $200,000. |
| 102 | 7-18-2013 | Promissory Note from Maria Avelino and Catalina Generoso to Connie Troncale for $700,000. |
| 103 | 6-30-2009 | Email from Robert Kronenfeld to Catalina Generoso re: "Billboards – KB Home San Diego, Viejo & Anaheim" |
| 104 | 11-19-2009 | Email from Robert Kronenfeld to Avelino re: KB Home Anavla |
| 105 | 8-24-2012 | Promissory Note from Catalina Generoso to Jorge and Lucille Ragde for $200,000. |
| 106 | 9-12-2012 | Promissory Note from Catalina Generoso to Jorge and Lucille Ragde for $200,000. |
| 107 | MULTIPLE DATES | Checks written from Catalina Generoso to Connie Troncale |
| 108 | MULTIPLE DATES | Checks written from Catalina Generoso to Marissa Pomerantz |
| 109 | MULTIPLE DATES | Checks written from Catalina Generoso to "PENFED" |
| 110 | MULTIPLE | Checks written from Catalina Generoso to "U.S. Bank" |

DEFENDANT CONNIE JOSEPHINE TRONCALE'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

| Exh. | Date | Description |
|---|---|---|
| | DATES | |
| 111 | MULTIPLE DATES | Checks written from Catalina Generoso to "Citibank" |
| 112 | MULTIPLE DATES | Checks written from Catalina Generoso to "Danael Karlsson" |
| 113 | MULTIPLE DATES | Checks written from Catalina Generoso to "Gene Ewing" |
| 114 | MULTIPLE DATES | Checks written from Catalina Generoso to "Rene Ovando" |
| 115 | MULTIPLE DATES | Checks written from Marissa Pomerantz to Catalina Generoso |
| 116 | MULTIPLE DATES | Check deposit receipts of checks written by Catalina Generoso to Marissa Pomerantz |
| 117 | MULTIPLE DATES | Check deposit receipts of checks written by Catalina Generoso to Connie Troncale |
| 118 | 2-25-2012 | Wells Fargo Withdrawal Record of $13,000 |
| 119 | 11-26-2007 to 4-24-2008 | Chase Home Equity Line Account Activity Transaction History |
| 120 | 5-6-2013 | Bank of America Checking Account Transaction Ledger |
| 121 | 3-24-2013 to 3-24-2014 | Sallie Mae Loan Transaction History Record |
| 122 | 3-5-2013 to 12-13-2013 | Text Message Exchange between Anders Karlsson and Connie Troncale |
| 123 | 3-18-2014 to 8-14-2014 | Text Message Exchange between Anders Karlsson and Connie Troncale |
| 124 | 7-1-2013 to 4-22-2014 | Text Message Exchange between Anders Karlsson and Connie Troncale |
| 125 | 12-5-2013 | Text Message Exchange between Anders Karlsson and Connie Troncale |
| 126 | 3-13-2011 to 11-25-2013 | Text Message Exchange between Maria Avelino and Connie Troncale |
| 127 | 6-8-2010 to 8-23-2013 | Text Message Exchange between Maria Avelino and Marissa Pomerantz |
| 128 | 2-10-2012 to 3-23-2012 | Text Message Exchange between Maureen Jannini and Connie Troncale |
| 129 | 12-7-2013 to 5-21-2014 | Text Message Exchange between Jorge Ragde Jr and Connie Troncale |
| 130 | 5-28-2014 to | Text Message Exchange between Jorge Ragde Jr and |

22

| Exh. | Date | Description |
|------|------|-------------|
| | 9-8-2014 | Anders Karlsson |
| 131 | 8-31-2013 | Text Message Exchange between Lucille Ragde and Maria Avelino |
| 132 | 11-19-2012 | Email from Avelino to Anders Karlsson re: wire transfer information |
| 133 | 11-15-2012 | Email Chain including exchange between Susanne Lambert, Anders Karlsson, and Gene Ewing |
| 134 | 12-14-2012 to 12-17-2012 | Email exchange between Gene Ewing and Anders Karlsson |
| 135 | 5-31-2013 | Email from Avelino to Troncale |
| 136 | 6-10-2013 | Email from Susan Cullen to Maria Avelino re: Payment |
| 137 | 8-7-2013 | Email from Anders Karlsson to Avelino re: demand for $150,000 |
| 138 | 8-7-2013 | Email from Anders Karlsson to Avelino re: demand for $100,000 |
| 139 | 8-14-2013 | Email from Marissa Pomerantz to Connie Troncale re: KB Answer |
| 140 | 8-17-2013 | Email exchange between Meir Westreich and Anders Karlsson re" generosa notes and payments. 2nd Note" |
| 141 | 8-30-2013 | Screenshot of Voicemail Message from Anders Karlsson |
| 142 | 8-31-2013 | Email Exchange between Karlsson, Ewing and Troncale re: "sept. 3 2013 4pm" |
| 143 | 9-3-2013 | Email Exchange between Ewing and Anders Karlsson re: "honey tues 1pm malibu meetings" |
| 144 | 9-12-2013 | Email Exchange between Rene Ovando, Anders Karlsson and Gene Ewing re: "requested copies" |
| 145 | 9-3-2013 | Email from Avelino to Anders Karlsson re: "KB Homes articles" |
| 146 | 2012 | 2012 1099-MISC from EMS Enterprises to Maria Avelino |
| 147 | 6-21-2013 | Short Form Deed of Trust and Assignment of Rents (Individual) from Catalina Generoso to Maria Carldad Eustaquio |
| 148 | 11-13-2013 | Real Property Investigation Report from Shoreline Investigations to Marissa Pomerantz |
| 149 | 5-2-2011 | Wells Fargo Combined Statement of Accounts Record of Malibu Café LLC Purchase on 5-2-2011 |
| 150 | UNDATED | Hand Written Notes on Jorge V. Ragde Letterhead |
| 151 | 6-20-2011 to | Catalina Generoso PMA Wells Fargo PMA Package |

23

| Exh. | Date | Description |
|---|---|---|
| | 1-23-2012 | documents |
| 152 | 8-28-2012 to 12-27-2012 | Phone Records of Marissa Pomerantz |
| 153 | 11-28-2010 to 10-27-2011 | Phone Records of Marissa Pomerantz |
| 154 | 8-15-2013 | Letter from Toni LeGras to Avelino |
| 155 | MULTIPLE DATES | Checks written from Catalina Generoso to Toni LeGras |
| 156 | 1-17-2014 | Complaint [Dkt. 1] |
| 157 | 11-13-2012 | Drips on White Contract – Exhibit A to Complaint [Dkt. 1] |
| 158 | 3-4-2013 | Letter to Anders Karlsson and Gene Ewing from Modern Art Conservation – Exhibit B to Complaint [Dkt. 1] |
| 159 | UNDATED | Ewing "Art Furniture" - Exhibit C to Complaint [Dkt. 1] |
| 160 | 9-28-2012 | Promissory Note from Catalina Generoso to Anders and Danael Karlsson for Principal Investment of $300,000 – Exhibit D to Complaint [Dkt. 1] |
| 161 | 11-13-2012 | Promissory Note from Catalina Generoso to Anders and Danael Karlsson for Principal Investment of $150,000 – Exhibit E to Complaint [Dkt. 1] |
| 162 | 12-7-2012 | Promissory Note from Catalina Generoso to Danael Karlsson for Principal Investment of $100,000 – Exhibit F to Complaint [Dkt. 1] |
| 163 | 3-20-2014 | First Amended Complaint [Dkt. 7] |
| 164 | 6-25-2014 | Second Amended Complaint [Dkt. 29] |
| 165 | 9-22-2014 | Third Amended Complaint [Dkt. 42] |
| 166 | 10-20-2014 | Fourth Amended Complaint [Dkt. 46] |
| 167 | UNDATED | Audio Recording of "Honey" and Martina – TRON 003384.m4a |
| 168 | 11-20-2014 | Declaration of Anders Karlsson in Support of Motion of Plaintiffs for Order Permitting Discovery of Financial Condition of Defendants Constance J. Troncale and Marissa Pomerantz in the Ragde Action |
| 169 | 2-27-2015 | Notice of Ruling on Defendants Constance J. Troncale and Marissa Pomerantz's Demurrer to First Amended Complaint in the Ragde Action |
| 170 | 11-24-2015 | Jorge V. Ragde and Lucile Ragde's Opposition to Motion to be Relieved as Counsel in the Ragde Action |

| Exh. | Date | Description |
|---|---|---|
| | MULTIPLE DATES | Text Messages between Avelino and Karlsson and other documents to be produced by Plaintiff pursuant to Trial Subpoena |

DEFENDANT CONNIE JOSEPHINE TRONCALE'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW